[L. A. No. 3126.  Department Two.—August 22, 1913.]

JAMES F. MOSELEY, a Minor, by Lemuel Moseley, his Guardian *ad litem*, Respondent, v. LOS ANGELES PACKING COMPANY, Appellant.

NEGLIGENCE—MASTER AND SERVANT—FAILURE TO REPAIR DEFECTIVE MACHINE—ASSUMPTION OF RISK—ATTEMPT TO MAKE REPAIRS.—In an action to recover damages for personal injuries occasioned to an employee while operating a dangerous and defective machine, the defects of which the employer had negligently failed to repair, it is held that the evidence, as matter of law, did not preclude the plaintiff from recovery under the doctrine of the assumption of risk, as the accident occurred after the employer had inspected the machine, had actual knowledge of the defects, and had undertaken to repair it in the very particular which had theretofore made its operation dangerous.

ID.—ORDINARY CARE IN MAKING REPAIRS.—It is the duty of an employer when he undertakes to repair a defective machine to exercise ordinary care in seeing that it is accomplished, so that the machine might be thereafter safely used by the employee.

ID.—ASSUMPTION THAT REPAIRS ATTEMPTED HAD REMEDIED DEFECT.—Where an employer undertakes to repair a defect in a machine, and informs the employee that he has done so, the latter has the right to assume that the defect has been cured, that the machine is in good working order, and to resume his work on it upon this assumption, and unless he knew that the attempted repairs had not remedied the defect and that the machine was still attendant with the same danger as previously, he cannot be held to have assumed the risk in its further operation.

ID.—KNOWLEDGE OF INEFFECTUAL REPAIRS—QUESTION FOR JURY.—Under the circumstances of this case, the question whether the plaintiff did or did not have knowledge that the attempted repairs were ineffectual when he resumed the operation of the machine was a question to be determined by the jury under the evidence.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

George H. Moore, for Appellant.

Collier & Clark, for Respondent.

LORIGAN, J.—Plaintiff sued to recover damages for personal injuries.

The complaint alleged that plaintiff was employed on or about the twenty-fifth day of May, 1910, by defendant in its factory to operate a dangerous and defective machine; that said defect therein—the operation of a lever—was known to the defendant and made it dangerous for plaintiff to work at such machine; that defendant was notified of such defect by plaintiff and asked to repair it, which defendant promised to do; that relying on said promise plaintiff continued to operate such machine; that defendant negligently failed to remedy such defect, and while plaintiff was working at the machine, relying on said promise and without any fault on his part, he was injured thereby by having portions of the fingers on his right hand cut off.

The answer of the defendant denied all the allegations of the complaint except that plaintiff was employed by defendant and the fact that he was injured, and as special defenses defendant set up contributory negligence on the part of plaintiff, and also assumption of risk by him.

There was a verdict and judgment thereon in favor of plaintiff for five thousand dollars. A motion of the defendant for a new trial was denied and this appeal is taken by it from both the judgment and the order denying its motion.

The evidence produced on the part of the plaintiff shows that the machine in the operation of which he was injured, was a second-hand one when it was installed in the factory of the defendant. It was designed for the manufacture of sausages, and is constructed of steel and operated by steam. It has a steel bucket sixteen inches in diameter and about two feet deep into which the operator places the sausage meat. Into this bucket, when the machine is in actual operation in the manufacture of sausages, works a close-fitting plate or head which presses down upon the ground meat in the bucket and forces it through a spigot into the sausage casing. This plate or head is on the end of a piston which is within the steam cylinder and its operation is controlled by means of a lever. Frequently during the day it is necessary to open the machine so that the bucket may be replenished with meat, and it is equally necessary for the operator daily at the close of work on the machine to open it and clean out the bucket. The ma-

chine is opened by raising a lever to its full height. This done, the plate or head raises clear of the mouth of the bucket which tilts toward the operator, and when the lever of the machine is working properly the plate and bucket should remain in this position until the operator moves the lever down. When he does so the bucket is thrown back into a perpendicular position, the plate or head drops into it and the steam pressure is immediately exerted upon it, slowly or rapidly as the operator may handle the lever. All the movements of the machine are automatic save as to this lever which is operated by hand.

Many times before plaintiff was put to operating this machine it had gotten out of order and repairs had been made on it by defendant. It was out of order in the same particulars that had necessitated the previous repairs when plaintiff was put in charge of it. Bolts were loose and the steam box needed packing. As a result of this the machine leaked steam a great deal. It was further defective as to the operation of the lever. As originally constructed and when in good working order the lever when fully raised was designed to be kept up by steam pressure. The evidence on the part of the plaintiff shows that when plaintiff commenced working on it this machine was defective as to the operation of the lever and this proceeded from the fact that there was such a leakage of steam from the steam box that at times no sufficient steam pressure would be exerted on the lever to keep it up. When lifted to its full height it would sometimes remain up, sometimes fall slowly and sometimes suddenly, depending on the degree of steam pressure exerted on it.

Plaintiff was twenty years of age when put in charge of this machine, and had operated it about a month when the accident complained of occurred. During the first week that he operated the machine the lever dropped suddenly once or twice after he had raised it and opened the machine, and on both of these occasions he complained to the foreman about it, who told him that he (the foreman) knew the machine was defective; that he knew that the lever had dropped before and that he would have it fixed. The foreman thereupon reported its condition to the superintendent, as he had previously done, and was assured that the machine would be repaired right away. No repairs, however, were then made or attempted to

be made. The plaintiff thereafter continued to operate the machine daily during the next three weeks, and up to the Sunday previous to the accident the lever dropped suddenly several times. Whenever it did so he complained to the foreman, who as often promised that the machine would be repaired and called on the superintendent to have it done. The latter promised to do so but nothing whatever was done. During the week previous to the accident the lever dropped again a couple of times and further complaint was made by plaintiff. On Friday of that week the foreman called the superintendent in to look at the machine and its condition of excessive leakage of both steam and hot water, and the falling of the lever was complained of to him by plaintiff and by the foreman and other employees working in the room. The superintendent told them to finish the work the best they could; that it would keep them back with the work to fix it then, but that he would have the machine repaired on the following Sunday. Plaintiff resumed his work. No repairs were made Sunday as last promised they would be, but on the next day—Monday—the engineer of the defendant and his assistants worked a couple of hours on the machine, packing the steam box and tightening the lever. The apparent effect of these repairs was that the escape of steam was almost checked. The machine, however, continued to leak a considerable quantity of hot water. When he had finished working, the engineer stated that the machine would now work all right; that it was unnecessary to have any one hold up the lever as had theretofore occasionally been done. The foreman testified that after these repairs were made by the engineer the machine was in good condition as to the operation of the lever, and that he told plaintiff so. On Monday, soon after the repairs were made, the plaintiff again commenced to operate the machine. The foreman testified that he then asked him how the lever worked and plaintiff replied that he did not know "how long it would remain in that condition; that he did not know how long it would run that way." Plaintiff operated the machine the afternoon of Monday, during which the lever worked all right, but the machine still leaked hot water and some steam. Plaintiff testified that if he was not mistaken the lever dropped on the next day—Tuesday; he would not, however, be sure of it; he would not swear to it; that it seemed to

him that he told the foreman so.   He admitted stating to the foreman the same day the machine was repaired that the work on it did not seem to help it; that it did not seem to help the leakage any.   The foreman testified that the only statement made by plaintiff to him after the repairs and up to the accident with reference to the machine was, as heretofore stated, that he did not know how long the lever would remain in condition, and both the foreman and an employee working about the machine with plaintiff said that they did not observe any dropping of the lever while plaintiff was operating the machine on Tuesday.   On Wednesday, after operating the machine all day without any trouble from the lever, plaintiff, about 5 o'clock in the afternoon, proceeded, as was his duty, to wash and clean the bucket.   He raised the lever, opened the machine, and was engaged in washing the bucket, having his right arm inserted therein up to the shoulder, when the lever, which had remained up for about five minutes, dropped suddenly.   He felt the machine closing and tried to pull his arm out, but before he could do so the machine closed on his hand, severing parts of all the fingers therefrom, and otherwise injuring the hand.   This was the only time during his operation of the machine that the lever dropped while plaintiff had his hand in the bucket.

In addition to this showing, made on the part of the plaintiff, he himself testified that he knew while he was operating the machine that when the lever came down the plate or head closed down tight inside the bucket, and that if anything was caught between them it would be crushed; that the lever was just as liable to drop one time as another and that if it dropped and caught his hand he would be hurt, but that he never gave the matter any thought; that "I just took my chance on it; it was just as liable to drop as not"; and that he knew that if it dropped down and caught his hand he would get hurt.

It further appears from the testimony of the foreman that at one time while engaged to operate this machine plaintiff for awhile refused to work on it.   Also that on the morning of the accident plaintiff and other employees in the sausage manufacturing room talked about quitting their employment at the end of the week; and that after the accident the employees further talked of doing so.   It does not appear when,

in the course of his employment, plaintiff refused to work on the machine or why. The testimony of the foreman was very indefinite on the subject. The testimony of plaintiff himself shows that he worked on the machine continuously after he commenced operating it; certainly during the period after the engineer had undertaken to repair it down to the time of the accident. On the subject of quitting their employment, the testimony of the foreman, who alone testified on the subject, is equally indefinite. Counsel for respondent claims to gather from it that plaintiff and the other employees contemplated leaving at the end of the week because the repairs to the machine made on the Monday previous had accomplished nothing; that the machine was still dangerous on account of the defective condition of the lever and the escape of steam and hot water. But as we read the evidence, and as no doubt the jury considered it, or, at least, were warranted in doing, the morning conversation had nothing particularly to do with the machine. None of the men liked to work about it, it is true, and in all probability it may have entered into their conversation. But the reason the employees, including the foreman himself, contemplated leaving at the end of the week, was, in the latter's own language, "because we got to work always overtime and afterwards wash all the floors and the boys wouldn't do that work at that time." In the second talk about leaving, the plaintiff, of course, did not participate in the conversation, which was after the accident, and when it was apparent therefrom that the attempted repairs of the engineer on the machine had been ineffectual.

These are the main facts presented in the case as made by plaintiff.

Evidence was introduced by defendant tending to show that no complaints of the condition of the lever had been made to defendant while plaintiff was employed on the machine or any promises made to repair it; that the lever was in good working order when plaintiff was injured; that the only complaints made respecting the machine were that it leaked steam and water, and that several weeks previous to the accident the engineer of the defendant had tightened up the machine to prevent it from doing so.

At the close of the evidence on the part of plaintiff defendant moved for a nonsuit, which was denied, and it now assigns

this ruling as error. It is also claimed that the verdict of the jury is not sustained by the evidence. Both of these claims are based on the evidence presented on the part of plaintiff.

It is insisted by appellant that this evidence shows that the defective condition of the lever on the machine was known to plaintiff as soon as he commenced to operate it; that he then knew and fully understood and appreciated the danger of injury to him incident on its continued operation in its defective condition; that even if a promise to repair was made, as claimed by plaintiff, he was only warranted in relying on it for a reasonable time, and that time having expired before the accident without such repairs having been made, plaintiff, as a matter of law, in thereafter continuing to operate the machine under these circumstances, assumed the risk of injury, and could not assert any liability upon the part of defendant therefor.

There is no necessity of discussing the general rules of law on the assumption of risk. It may be conceded (though we do not so decide) that up to the time when the defendant, as the evidence on the part of plaintiff shows, actually undertook to repair the defect in the lever, if an injury had occurred to plaintiff, he would be precluded from recovery under the doctrine of assumption of risk. But no injury was suffered by plaintiff during that period. It occurred during the operation of the machine by plaintiff after the defendant had inspected it, had actual knowledge of the defect, and had on the Monday previous to the accident undertaken to repair it in the very particular which had theretofore made its operation dangerous—the falling of the lever. It was the duty of defendant when it undertook to repair the machine to exercise ordinary care in seeing that it was accomplished so that the machine might be thereafter safely used by plaintiff. The engineer of defendant was sent by it to do this very thing, proceeded to do it, and when he had finished working on the machine declared that it was in good order with respect to the operation of the lever. The foreman informed plaintiff to the same effect. Plaintiff had a right, under these assurances of actual repair, to assume that the defect had been cured; that the machine was in good working order and to resume his work on it upon this assumption, and unless he knew that the attempted repairs had not remedied the defect and that

the machine was still attendant with the same danger as previously, he could not be held to have assumed the risk in its further operation. Of course, the claim of appellant is that it conclusively appears from the testimony of plaintiff himself, and other testimony introduced on his behalf, in making out his case in chief, that he did know that the repairs made on Monday previous to the accident had not remedied the defect; that he knew the lever was still out of order, and that he was exposed to the same perils and risks from its sudden falling after the repairs were attempted as he was subject to before. In this regard appellant asserts that the evidence shows that plaintiff himself declared, after the repairs were made, that they did not seem to help the operation of the machine; also that the lever dropped a couple of times on Tuesday, after the repairs, just as it dropped during the several weeks previously. But it cannot be said that these facts, as claimed by appellant, are conclusively shown by the evidence, as it assumes they are. One of the statements of plaintiff about the repairs not seeming to help the machine had reference to its continuing leaky condition after the repairs were made. While we have heretofore only referred to this condition in a general way, it appears from the evidence that aside from the falling of the lever, the machine continually leaked steam and hot water, and on this account was a constant source of discomfiture and inconvenience to any one operating it or working about it. In fact this excessive escape of steam from the machine was also at times attendant with danger to one engaged in its operation, and it was this leaky condition that plaintiff referred to in one of his statements that the repairs did not seem to help any. It is true that while operating the machine after its repairs plaintiff stated to the foreman, in response to an inquiry by the latter as to how the lever then worked, that he did not know how long it would remain in that condition. The lever at the time was working properly. Plaintiff had no expert knowledge of the mechanism of this machine; of the kind of repairs which were necessary to be made on it to put it again in good workable order after it had become defective. He probably knew, though the evidence is not clear even on that point, that the defective condition of the lever proceeded from the excessive escape of steam from the steam box. When the machine was

repaired he saw that to a certain degree, though not to the extent theretofore, the machine still leaked steam, and his statement that he did not know how long the machine—the lever—would remain in condition, nor how long it would run that way, may have had reference to the continued escape of steam.   At most it was but the expression of an uncertainty in his mind as to how long the present apparently good condition of the lever would last.   It was not a declaration that as a fact plaintiff knew the repairs had been ineffectual, nor did his declaration contain any statement from which it could be unquestionably said that he then knew or believed the machine to be still out of order.   Of course these declarations of plaintiff might be considered by the jury as well as his entire conduct with reference to the operation of the machine, and other circumstances   disclosed   by   the   evidence,   in   determining whether he knew, when he resumed work after the repairs, that the defect in the lever had not thereby been remedied. It cannot be said, however, that the declaration relied on conclusively showed that he had such knowledge.   Under these circumstances, whether plaintiff   did   or   did   not have such knowledge when he resumed the operation of the machine was a question to be determined by the jury under the evidence. Nor is the evidence, at all conclusive to the effect that the lever dropped on Tuesday after the repairs were made.   Plaintiff was not certain that it did.   He thought it had and that he had complained of it to the foreman.   He was not sure about it; he would not swear to it.   It appears from the testimony of the foreman that the plaintiff did not make any such complaint, and others working in the vicinity of the machine with plaintiff did not perceive that the lever had fallen that day. In this condition of uncertainty, the question of whether the lever did or did not fall on Tuesday was for the jury.   In fact, the evidence was of such a character that it was clearly a question for the jury to determine whether plaintiff, after the repairs were attempted to be made, knew that they had not been effective to remove the defect in the lever; that the defect still existed, and that the operation of the machine was attendant with the same danger at the time he resumed and continued his work with it as it was previous to the making of the repairs.

This was doubtless the view of the court in denying the motion for a nonsuit; that the evidence on the part of the plaintiff presented a sufficient case for the determination of these questions by the jury, and we are satisfied its ruling in this respect was correct.

The attack of appellant on the verdict of the jury for insufficiency of the evidence to sustain it, in view of what we have already said, needs little consideration. This attack amounts simply to a further renewal of the points made upon the nonsuit, and is based upon what appellant there claims were the facts conclusively shown by the evidence. But, as pointed out in sustaining the ruling on the nonsuit, the evidence did not conclusively establish the facts as appellant claims it did. What the facts were in this respect, as we have said, was a matter for the determination of the jury under the evidence. In returning a verdict for the plaintiff, necessarily the jury found that the defendant undertook to make the repairs to the machine; that plaintiff resumed his work with it on the assumption that such repairs had remedied the defect, as the engineer who made them and the foreman of defendant had told him they had; that the lever did not drop on Tuesday, and that after the repairs plaintiff had no knowledge or notice that such repairs had not removed the defect in the lever until it dropped and he was injured thereby. The evidence in the case was such as to warrant this conclusion and consequently the verdict for plaintiff should not be disturbed.

The correctness of some instructions given by the court to the jury and the modification by the court of certain instructions offered by appellant and given as modified are questioned by appellant. An examination of the instructions attacked discloses nothing which constitutes error in the giving or modification of any of them. They are the usual instructions given in this class of cases, and whatever criticism might be directed against any one of them taken singly, still, taken as a whole, they correctly state the law under which the jury was to settle the issues between the parties.

The judgment and order appealed from are affirmed.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.